GRAHAM v. GRAHAM ET AL.

55   23
130  401
55   23
134  189
55   23
138  392
55   23
155  145

REAL ESTATE.—*Action to Quiet Title.—Defence.*—In an action to quiet the title to real estate, the defendant, under the general denial, can give in evidence all defences, either legal or equitable.

SAME.—*Conveyance.—Deed.—Mortgage.—Vendor and Purchaser.—Notice.*— Where a deed of conveyance of real estate, though absolute on its face, is executed and intended simply as security for the payment of a debt owing from the grantor to the grantee, it amounts to a mortgage only, and confers no title upon a person who, having notice of such fact, obtains a conveyance of such real estate from such grantee.

VERDICT.—*Special Finding.—Supreme Court.*—Where, under the issues formed in a cause, evidence could have been given of a state of facts which would reconcile an apparent inconsistency between the general verdict and a special finding returned by the jury trying such cause, on appeal to the Supreme Court, from a judgment on such general verdict, it will be presumed, the evidence not being in the record, that such state of facts had been proved.

ESTOPPEL.—*Conveyance.—Title Acquired after Conveyance by Quit-Claim.*— Where one, who, by a quit-claim deed, has conveyed real estate to which he had then no title, afterwards acquires title thereto, he is not estopped, by such quit-claim, from asserting his after-acquired title to such land.

From the Marion Superior Court.

*C. Baker, O. B. Hord, A. W. Hendricks* and *D. V. Burns,* for appellant.

*E. T. Johnson, J. T. Dye* and *A. C. Harris,* for appellees.

WORDEN, C. J.—This was an action to quiet the title to real estate, brought by the appellant, Amanda E. Graham, against the appellees, John J. Graham, her husband, and

Phanuel Graham, her husband's mother.   Her complaint is substantially as follows :   She alleges that she is the owner of the real estate described in the complaint, the title to which she acquired by a quit-claim deed, dated February 10th, 1870, executed by defendant Phanuel, which was never recorded, but was lost or destroyed by defendant John ; that Phanuel was denying the execution of the deed, and John was claiming to be the owner of the property; that a cloud was thus cast upon her title, which she prays to have removed, and that her title be quieted.

To this complaint the defendant Phanuel answered—

1st. By general denial.

2d.  She alleges, by way of cross-complaint, that her co-defendant, John, was indebted to her in the sum of seven hundred dollars, on a note dated October 25th, 1865 ; that he was the owner of the real estate described in the complaint, and, on February 9th, 1870, conveyed it to her by a quit-claim deed as security for her debt.  She files copies of the note and deed, says her debt is due and unpaid, that her deed is a mortgage, and asks that it be foreclosed, as such, for the payment of her debt.

3d.  By way of further cross-complaint, she sets up a mortgage securing her said seven hundred dollar debt, which she says was signed by both Amanda and John, but was never delivered.   She also prays for the foreclosure of this mortgage.

The appellant answered these cross-complaints by general denial.   She also pleaded that the mortgage set up by Phanuel was signed by her without consideration.   To this last answer Phanuel replied by general denial, and this closed the issues between Phanuel and appellant.

The defendant John J. Graham answered the complaint—

1st. By general denial.

2d.  He says that he was indebted to Phanuel, his co-defendant, in the sum of seven hundred dollars, witnessed

by his note dated October 25th, 1865; that he was the owner of the real estate in controversy; that, on February 9th, 1870, he conveyed it to Phanuel by a quit-claim deed, (the same set up by Phanuel) as security for said debt; that this deed is still in full force, as a mortgage, and that he is the owner, in fee-simple, of the real estate, subject to the mortgage lien; that if plaintiff has ever received the conveyance from Phanuel, for said land, set forth in her complaint, it was without consideration, without his knowledge or consent, with full knowledge, on plaintiff's part, of his title, and of all the facts; that by plaintiff's assertions a cloud rests upon his title, which he asks to have removed.

3d. He pleads the coverture of the plaintiff.

4th. He avers that he executed the quit-claim to his co-defendant, Phanuel, as a mortgage, as he had before alleged; that afterwards it was orally agreed that Phanuel should convey the real estate to plaintiff, on condition that plaintiff should join with him in a mortgage of the realty, to Phanuel, to secure her debt; that plaintiff agreed to join with him in this mortgage; that, in pursuance of this agreement, Phanuel signed the deed to plaintiff, set up in the complaint, and delivered it to him, John, to be delivered to plaintiff when she should execute the mortgage; that plaintiff refused to execute the mortgage, and for this reason the deed was never delivered to her.

Appellant's demurrer was sustained to the third paragraph of this answer; she pleaded the general denial to the second and fourth, and this closed the issues between her and defendant John J. Graham.

The defendant John filed the general denial, to the cross-complaint of his co-defendant, Phanuel. He also denied, under oath, the execution of the mortgage set up in the third paragraph of Phanuel's cross-complaint. He further answered this cross-complaint, admitting that he had signed the mortgage, but averring that it was agreed by Phanuel, that, before it should be delivered to her, she

should reconvey his real estate to him, which she had failed to do, and for this reason he had not delivered the mortgage to her. He prays for the cancellation of the mortgage.

To these answers Phanuel filed a general denial, and this closed the issues between the two defendants.

Upon these issues the cause was tried by a jury.

During the trial the appellant and Phanuel made an agreement in writing, which was entered of record in the cause, by which appellant consented to the establishment and enforcement of Phanuel's lien on the real estate, as security for her debt.

This ended the controversy, so far as Phanuel was concerned, and from this point the contest proceeded between appellant and her husband.

The jury found—

*First.* A verdict in favor of Phanuel, assessing the amount of her debt, against John, at nine hundred and ninety-six dollars and twenty-five cents, and declaring her lien on the real estate.

*Second.* A general verdict in favor of defendant John J. Graham.

*Third.* They answered interrogatories, propounded to them by the court, on motion of the appellant, as follows:

"1st. Did not the defendant John J. Graham cause to be prepared, signed and acknowledged, the two deeds in evidence, releasing and quit-claiming to the grantees therein, the real estate therein described, situate in the county of Marion and State of Indiana, viz.: The east half of the north-east quarter of section 31, in township 15, of range 4; also, the west half of the north-west quarter of section 32, township 15, of range 4; one dated the 9th day of February, 1870, in which John J. Graham is grantor and Phanuel is grantee, and the other dated the 10th day of February, 1870, in which Phanuel is grantor and Amanda E. Graham is grantee?

"Answer. Yes.

"2d. Did not John J. Graham execute the deed described in the first interrogatory, wherein he was grantor, and Phanuel Graham grantee?

"Answer. Yes.

"3d. Did not John J. Graham cause said real estate to be conveyed to Phanuel Graham, so that she might convey the same to Amanda E. Graham?

"Answer. Yes.

"4th. Did not Phanuel Graham sign and acknowledge the deed in which she was grantor, and Amanda E. Graham grantee, mentioned in the first interrogatory, at the request of John J. Graham?

"Answer. Yes.

"5th. Was not said deed, from Phanuel Graham to Amanda E. Graham, delivered, by John J. Graham, to Isaac H. Vanhouton, the agent of Amanda E. Graham?

"Answer. No.

"6th. Did not John J. Graham afterward, without the consent of, or authority from, Amanda E. Graham, take said deed from the possession of Isaac H. Vanhouton?

"Answer. No.

"7th. Did not Phanuel Graham execute the deed mentioned in the first interrogatory, wherein she was grantor, and Amanda E. Graham grantee?

"Answer. Yes.　　　　　A. SMITH, Foreman."

The appellant moved for judgment, in her favor, on the special findings, notwithstanding the general verdict against her. The motion was overruled, and judgment rendered, on the general verdict, for defendant John. And this is the only action of the court below, of which she is now complaining.

The evidence is not in the record.

The question arising in the record is, whether the general verdict, and the special findings of the jury in answer to interrogatories, can stand together. If they are

so inconsistent that both can not stand together, the latter must control the former.

We, however, see no necessary antagonism between the general verdict and the special findings.

The answer of the jury to the seventh interrogatory is the only one that seems to involve any difficulty. In that, the jury say that Phanuel Graham did execute the deed mentioned in the first interrogatory, wherein she was grantor, and Amanda E. Graham grantee. Whether the word *execute*, as used in the interrogatory, was used in a legal sense, so as to include a delivery, we need not enquire. For the purposes of the case we will assume that it was.

The plaintiff's complaint was. to quiet her title to the land, she claiming it under an alleged deed to her, from Phanuel Graham, of the date of February 10th, 1870. To this complaint, the defendants could give in evidence any matter of defence, either legal or equitable, under the general denial. 2 R. S. 1876, p. 252, section 596; 2 R. S. 1876, p. 254, secs. 611-612.

It may be gathered from the answers of the jury to the interrogatories:

1st. That by quit-claim deed, bearing date February 9th, 1870, the defendant John J. Graham conveyed the property to Phanuel Graham.

2d. That by quit-claim deed, bearing date February 10th, 1870, Phanuel Graham conveyed the property to the plaintiff, Amanda E. Graham.

3d. That the purpose of John J. Graham, in conveying the property to Phanuel, was to enable the latter to convey it to the plaintiff. Now, if there is any supposable state of facts that could have been shown under the pleadings filed, including the general denial, under which, as we have seen, any matter of defence, either legal or equitable, could have been shown, we may suppose such facts were shown, and thereby reconcile the special findings with the general verdict. There might be, as we

think, several states of fact, that might have been shown, that would have reconciled the general verdict with the special findings. John J. Graham might have owed his mother, Phanuel Graham, and his purpose in making the deed to her may have been to secure her debt, purposing also that she should convey the property to Amanda E. Graham, his wife, with the understanding that his wife should join him in a mortgage of the property, back to his mother, to secure the debt. This the plaintiff may have refused to do, and the object of John J. in having Phanuel convey the property to the plaintiff may have failed. It may have been that the plaintiff refused to join her husband in the execution of the contemplated mortgage, before the deed was executed to her by Phanuel. Phanuel then would hold the deed from John J., to her, simply as a security for her debt. Indeed, if the deed from John J., to Phanuel Graham, though absolute on its face, was intended by the parties as security for a debt, it was but a mortgage; and once a mortgage, always a mortgage. If the conveyance from John J., to Phanuel Graham, was intended as a mortgage, it would seem that nothing whatever passed to the plaintiff, by the deed from Phanuel to her, she having notice of the facts, and the debt not having been assigned to her. The title to the property continued in John J., subject only to the mortgage. These facts would render the general verdict entirely consistent with the special findings.

We may suppose another state of facts, which might have been proved, that would have rendered the general verdict entirely consistent with the special findings.

When John J. Graham conveyed the property to Phanuel, he may have had no title whatever. He may have afterwards acquired a valid title. His deed to Phanuel, being only a quit-claim, did not work an estoppel, or prevent him from setting up, against the plaintiff, his after-acquired title. *Nicholson* v. *Caress*, 45 Ind. 479.

We can not say what was, or what was not, proved, the evidence not being in the record.

The judgment below is affirmed, with costs.