737 P.2d 85

**Theresa BACHICHA and Benny Bachicha, Plaintiffs-Appellants and Cross-Appellees,**

v.

**Norma J. LEWIS, a/k/a Jo Reynolds, Defendant-Appellee and Cross-Appellant.**

**No. 8706.**

Court of Appeals of New Mexico.

April 7, 1987.

Matias A. Zamora, D. Diego Zamora, Santa Fe, for plaintiffs-appellants and cross-appellees.

Charlotte H. Hetherington, Simons, Cuddy & Friedman, Santa Fe, for defendant-appellee and cross-appellant.

## OPINION

BIVINS, Judge.

Plaintiffs sued defendant for personal injuries and damages allegedly resulting when defendant's car struck plaintiffs' car from the rear. From a judgment on the verdict in favor of defendant and from the denial of their motions for judgment N.O.V. or for a new trial, plaintiffs appeal. Defendant cross-appeals from an order denying her costs. We remand the case for a new trial and decline to reach defendant's claim on the cross-appeal.

Plaintiff, Theresa Bachicha, was stopped behind another vehicle for a red traffic signal. Defendant, who was proceeding in the same direction, testified she was wearing new shoes and that her foot slipped off the brake pedal when she depressed it, causing her to run into the rear bumper of plaintiffs' car. No damage was done to plaintiffs' car, but there was testimony that the ashtray came loose from its bracket, the sun visor "flipped down," the trash receptacle located on the transmission bump fell to the floor, and Ms. Bachicha's purse was thrown to the floor. Ms. Bachicha also said her neck was "forcefully thrown backwards." She was wearing a seatbelt at the time.

We understand plaintiffs' issues to be as follows. They claim the trial court erred in denying their motion for a directed verdict on the question of liability made at the close of defendant's case, and in refusing to grant them a judgment N.O.V. made after the jury returned a verdict for defendant. Essentially, the claim below and on appeal is that reasonable minds could not differ as to the question of liability and the trial court should have directed a verdict in plaintiffs' favor on that question. Additionally, and related to that issue, plaintiffs claim trial error in the giving of a defense instruction on sudden emergency (and also inserting that contention as part of the issues instruction), and two instructions on violations of statutes that contain excuse and justification language. Plaintiffs contend that if they are not entitled to a directed verdict on the question of liability, at the very least they should have a

new trial since the challenged instructions injected false issues into the case. Actually these issues are interrelated because, according to plaintiffs, had the trial court not considered that fact questions existed as to sudden emergency and justification and excuse, it would have had no alternative but to direct a verdict in their favor as to liability.

In her answer brief, defendant calls our attention to the failure of plaintiffs to include as part of the record proper the trial court's jury instructions. *See* NMSA 1978, Civ.App.R. 7 (Repl.Pamp.1984); *Adams v. Loffland Bros. Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970) (matters not of record will not be considered on appeal). Because the sudden emergency instruction, NMSA 1978, UJI Civ. 16.17 (Cum.Supp. 1985), is referred to in the transcript of the jury instruction settlement conference, defendant does not seriously challenge the lack of record as to that instruction. Likewise, the same rationale applies to the instructions with the justification and excuse language. While not referred to by its uniform jury instruction number in the jury settlement conference, sufficiently clear language from the trial court's memorandum opinion on plaintiffs' post-verdict motions indicates that the trial court was referring to NMSA 1978, UJI Civ. 15.3 (Repl. Pamp.1980). *See Trujillo v. Baldonado*, 95 N.M. 321, 621 P.2d 1133 (Ct.App.1980). In any event, because of matters raised by defendant concerning marginal notes made by the jury that could affect the disposition of this case, we ordered, from the district court clerk, a copy of the trial court's instructions to the jury. *See State v. Garcia*, 92 N.M. 730, 594 P.2d 1186 (Ct.App. 1978). A review of the instructions confirms the trial court gave defendant's tendered sudden emergency instruction, UJI Civ. 16.17, included sudden emergency as part of her contentions in the issues instruction, and gave two UJI Civ. 15.3 violation of statutes instructions, both of which include the excuse and justification language that plaintiffs find objectionable. We, therefore, consider plaintiffs' contentions.

In giving UJI Civ. 15.3, the trial court relied on *Whitfield Tank Lines Inc. v. Navajo Freight Lines, Inc.*, 90 N.M. 454, 564 P.2d 1336 (Ct.App.1977), which held it was reversible error not to give the form of the uniform jury instruction with the excuse or justification language under the facts of that case. In *Whitfield*, there was evidence that while the defendant-driver had encountered snowdrifts before the accident, none had caused his tractor-trailer to jackknife. The snowdrift that caused the tractor-trailer to jackknife appeared identical to the others the driver had successfully negotiated by reducing his speed. When the tractor-trailer jackknifed "suddenly and without warning," the vehicle got away from the driver. There was also evidence that an expert would have continued to drive through a snowdrift similar to the one that caused the tractor-trailer to jackknife, and that not even an expert could have avoided a jackknife. This court stated that instructions with the excuse or justification provisions should have been submitted to the jury because the tractor-trailer's "presence in the wrong lane might have been caused by snow, wind and forces beyond anyone's control." *Id.* at 458, 564 P.2d at 1340.

We do not believe the evidence in the case before us required the use of an excuse or justification instruction. Defendant had observed plaintiffs' car for some distance and knew it was stopped at a traffic light. Defendant, who was wearing new shoes that she had not worn before, applied her brakes preparing to stop when suddenly and without warning her foot slipped off the brake pedal, causing her to hit plaintiffs' car. Defendant had applied her brakes approximately twenty times the day of the accident without any problem. In its memorandum opinion denying plaintiffs' post-trial motions for judgment N.O.V. or for a new trial, the trial court noted that defendant's foot slipping may have occurred because of the condition of the sole or, perhaps, because of foot placement, but, in any event, defendant testified it was "a sudden, unexpected incident that left her without a way to control the vehicle once it had occurred." While a party

is entitled to an instruction on a theory of the case supported by evidence, *Whitfield Tank Lines v. Navajo Freight Lines,* we fail to see where the evidence here warrants the additional language. The slipping of defendant's foot does not constitute a "force beyond anyone's control."

The last paragraph of UJI Civ. 15.3 provides: "To legally justify or excuse a violation of a statute, the violator must sustain the burden of showing that he did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." If a driver's foot slipping off the brake pedal could justify the additional language, there would be no need for NMSA 1978, UJI Civ. 15.1 (Repl. Pamp.1980) (the negligence per se instruction) because, in most cases, violation of the rules of the road do happen suddenly and unexpectedly. To allow the excuse or justification language here would virtually eliminate UJI Civ. 15.1. We hold the trial court erred in giving instructions Nos. 13 and 14 with the excuse and justification language.

For similar reasons, we hold the trial court erred in giving UJI Civ. 16.17 (the sudden emergency instruction). While we agree that evidence of defendant's negligence does not preclude the giving of this instruction, *Trujillo v. Baldonado,* nevertheless, where, as here, we have only defendant's negligence without any peril arising from the actual presence or the appearance of imminent danger to herself or another, the giving of the instruction was improper. *Delgado v. Alexander,* 84 N.M. 456, 504 P.2d 1089 (Ct.App.1972), *aff'd,* 84 N.M. 717, 507 P.2d 778 (1973).

Having found the giving of the objectionable instructions injected false issues, and thus constitutes reversible error, we must now decide the proper disposition. Plaintiffs argue that when the case is stripped of the objectionable instructions, there is no other choice but to remand for entry of a directed verdict in their favor on the question of liability. Defendant counters that the jury found her negligent; therefore, any error in giving the instructions

was harmless, citing *Corcoran v. Albuquerque Traction Co.,* 15 N.M. 9, 103 P. 645 (1909) (a party cannot complain of the giving or refusal to give instructions on an issue that the jury found in his favor). Thus, according to defendant, since the jury found for plaintiffs on the issue of negligence, but against them on the issues of proximate causation or damages, the verdict should stand.

In reaching this conclusion, defendant is not relying on interrogatories submitted to the jury, *see* NMSA 1978, UJI Civ. 22.20 (Cum.Supp.1985) (apparently not published as of the date of trial), but rather on marginal notes made to the issues instruction. Because of its clarity, we quote from the trial court's memorandum opinion as to what occurred. In speaking of its ruling on plaintiffs' motions for judgment N.O.V. or for a new trial, the trial court said:

> While it is not necessary to a determination of this issue, it is interesting to note that in Instruction No. 1, the jury was advised that the plaintiffs had the burden of proving one of at least two contentions, and that preliminary questions would be presented to the jury to answer. The contentions presented by the plaintiff were as follows:
>
> "1. The defendant Jo Reynolds failed to keep a proper lookout for vehicles in front of her including that of plaintiff Theresa Bachicha to avoid colliding with her.
>
> 2. The defendant Jo Reynolds failed to maintain control of her vehicle as to avoid colliding with that of the plaintiff Theresa Bachicha."
>
> In the margin on Instruction No. 1, the jury answered those contentions by stating:
>
> "Yes, by 12 vote."
>
> Similarly, the jury was advised:
>
> "The preliminary questions presented for you to answer are as follows:
>
> 1. Was the defendant Jo Reynolds negligent?
>
> 2. Was any negligence of the defendant Jo Reynolds a proximate cause of plaintiff's injuries and damages?"

The jury responded to these questions by writing in the margin of Instruction No. 1 "yes" to question number 1 and "no" to question no. 2.

The next section of Instruction No. 1 advises the jury if you answer "no" to either question 1 or 2, you shall return a verdict for the defendant and against the plaintiff.

Plaintiffs do not address this problem in their reply brief; they dismiss the contention claiming that "[s]ince the jury found that Defendant Reynolds was not negligent, it did not consider proximate cause or damages." Plaintiffs do not tell us how they arrived at that conclusion.

Since there was some evidence that would support findings of no proximate cause or no damages, we would be inclined to agree with defendant that the jury's verdict should stand, *if* it is permissible to ascertain the basis of a verdict based on marginal notes. For example, there was evidence that the impact occurred at a low rate of speed, 5 m.p.h. or less; that plaintiffs' car suffered no damage; and that at least one physician expressed the opinion that the impact would not have caused the injuries of which plaintiff, Theresa Bachicha, complained. In addition, defendant submitted a videotape of plaintiff bowling subsequent to the accident.

■ The trial court did not rely on the notations in making its ruling on plaintiffs' motions for judgment N.O.V. or for a new trial, nor do we. Under similar circumstances, the court in *Mills v. Jackson*, 711 S.W.2d 427 (Tex.Ct.App.1986), held that handwritten notations by the jury in the margin alongside the damage elements were not a proper basis for ascertaining the jury's actual answers. That court said:

In the case before this court, it is equally clear that there is a strong inference that the handwritten notations addressing the separate elements of damage were the basis for the jury's total damage award as they add up to equal this total. Nonetheless, it would be speculation on our part to assume that the notations represent the jury's actual answers. At most, the handwritten nota-

tions in the jury charge in this case represent the "mental process" by which the jury reached its verdict. The mental process by which the jury determined the amount of the verdict is ordinarily not cognizable by an appellate court. *Johnston Testers v. Rangel*, 435 S.W.2d 927, 933 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). The jury's reasons for reaching a particular verdict, as noted by the jury in ... a handwritten footnote notation to their [sic] verdict, are irrelevant, at least in the absence of some overt act of misconduct. *First National Bank in Dallas v. Zimmerman*, 442 S.W.2d 674, 678 (Tex.1969).

*Id.* at 430. We agree with that statement and hold that the handwritten notations here do not provide a basis for determining how the jury reached a verdict for defendant.

■ The fact that we reject the handwritten notations does not mean we must reverse with directions to enter a directed verdict for plaintiffs on the question of liability. Rather, under these circumstances where we cannot tell whether the jury based its verdict upon an improperly submitted issue, the proper procedure is to reverse and remand for a new trial on all issues. *State ex rel. Nichols v. Safeco Ins. Co. of America*, 100 N.M. 440, 671 P.2d 1151 (Ct.App.1983). On remand, assuming no additional evidence is presented, the trial court should submit UJI Civ. 15.1 (recodified, SCRA 1986, UJI 13–1501) to the jury, rather than UJI Civ. 15.3 (recodified, SCRA 1986, UJI 13–1503). While we have rejected the possible defenses of excuse, justification or sudden emergency, it is for the jury to decide whether defendant's actions violated NMSA 1978, Section 66–7–318(A) and thus constituted negligence per se. *Rogers v. Thomas*, 81 N.M. 723, 472 P.2d 986 (Ct.App.1970). While the use of the general form of verdict was proper, we note that the use of SCRA 1986, UJI 13–2220 would probably have made a new trial unnecessary under facts similar to this case.

Defendant filed a cost bill for $2,446.64, which the clerk taxed against plaintiffs. Plaintiffs objected and the trial court ordered each side to bear its own costs. De-

fendant claims abuse of discretion. We decline to reach this issue. *See generally Baca v. Marquez,* 105 N.M. 762, 737 P.2d 543 (Ct.App.1987).

Both parties requested the entire transcript of proceedings for use on appeal. Defendant did so on the basis that since the jury had written "No" alongside the issue of proximate cause, the issues of negligence, proximate cause and damages were at issue and the entire transcript was necessary for review. Plaintiffs moved this court to compel defendant to pay for the portion she requested. After a hearing, we ordered plaintiffs to pay for the initial cost of the record proper, that each side pay for the portion of the transcript of proceedings it ordered, and that the ultimate obligation to pay would be determined when the appeal was decided on the merits. We now modify that order so that defendant shall pay for the initial cost of the record proper and the filing fee. As modified, that order is hereby made permanent. We reverse and remand for a new trial consistent with this opinion.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.